IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLENE THIRION, | ) | CASE NO: 1:08-CV-3004 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF BEDFORD HEIGHTS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S TRIAL BRIEF

Pursuant to the Court's civil trial order, Plaintiff Charlene Thirion submits the following Trial Brief in advance of the Jury Trial scheduled for March 8, 2010:

### A. STATEMENT OF THE FACTS

For nine years, Plaintiff Charlene Thirion was an outstanding employee of the Bedford Heights' community center.[1] In January 2008, newly-elected mayor Fletcher Berger, an African American who **admitted** that one of his goals was to create a City workforce that reflected Bedford Heights' predominantly African American population[2] took office. Within weeks, Mrs. Thirion's supervisor, having been instructed by Mayor Berger to "strive to have a diverse workforce,"[3] initiated an effort to replace Mrs. Thirion – who is white – with an African American. Indeed, every full-time employee hired by the center during this period was African American.

The picture before and after Mayor Berger took office is a dramatic one. Just three months before Mayor Berger took office, Mrs. Thirion received an exceedingly positive performance review.[4] Yet immediately after Mayor Berger took office, Mrs. Thirion's supervisor began to paper Mrs. Thirion's personnel file with fabricated criticisms and threats – copying Mayor Berger on each of them.[5] Mrs. Thirion's shift was changed in an effort to force her to quit, while at the same time less senior African American employees were allowed to *choose* the work hours they preferred.[6] And that

---

[1] Declaration of Thomas Zammikiel at ¶4; Plaintiff's Consolidated Deposition Exhibit 14.
[2] Deposition of Fletcher Berger at 239.
[3] *Id.* at 234.
[4] Plaintiff's Consolidated Deposition Exhibit 14.
[5] *See* Plaintiff's Consolidated Deposition Exhibits 23, 37 and 38.
[6] Deposition of Charlene Thirion at 31; Declaration of Charlene Thirion at ¶4.

favorable evaluation written about Mrs. Thirion in 2007, went inexplicably **missing** from the City's records.[7]

Mrs. Thirion, who at the time was the sole source of income for her family, began to suffer from depression.[8] When she used approved sick time to seek psychological treatment, the City disciplined her for doing so.[9] When she complained of race and disability discrimination, Defendants cited her complaint as insubordination without conducting any investigation of any sort.[10] When Mrs. Thirion's illness eventually disabled her and required her to take medical leave,[11] Defendants initially approved her for leave through October 2008.[12] Yet in September 2008, Defendants terminated Mrs. Thirion in the middle of that approved medical leave and replaced her with an African American employee.[13]

Defendants tacitly admit that they retaliated against Mrs. Thirion. When Mrs. Thirion complained of discrimination in writing, Mrs. Gray asked Mayor Berger to discipline Mrs. Thirion on the same day for insubordination – and attached her complaint as a basis for that discipline.[14] Mayor Berger incorporated those findings in his letter terminating Mrs. Thirion's employment.[15] Moreover, just days after Mrs. Thirion requested a reasonable accommodation for her disability, Defendants terminated her employment, falsely claiming that she had exhausted her leave time.

In addition to this direct evidence, there is also strong circumstantial evidence of retaliation. Defendants' adverse actions came immediately after Mrs. Thirion's protected activity and Defendants *specifically referenced* Mrs. Thirion's protected activity when terminating her employment.[16] As for pretext, Defendants have offered changing and contradictory reasons for terminating Mrs. Thirion's employment. Defendants' most current reason for terminating Mrs. Thirion's employment – that she exhausted all available time off work as of August 25, 2008 – is inconsistent with Defendants' records, their own witnesses' testimony and City law.[17]

Mrs. Thirion's race discrimination claim is similarly grounded in Defendants' admissions and evidence. In Bedford Heights, African Americans constitute 70 percent of the population; the decision-makers at issue in this case are African American. After Mrs. Thirion was terminated she was replaced with an African American employee, who was promoted into her position.[18] In addition to pretextual shifting and unsupported

---

[7] See Plaintiff's Consolidated Deposition Exhibit 14, which is a copy of the evaluation that Mrs. Thirion retained. Plaintiff's counsel inspected Mrs. Thirion's original personnel file on December 2, 2009, and Exhibit 14 was **not** included within the nearly 250-page file. (Deposition of City's 30(B) designee Mark Cegelka at 268).

[8] Declaration of Charlene Thirion at ¶¶ 4-5; Declaration of Dr. Terrance Scanlon at ¶3.

[9] Plaintiff's Consolidated Deposition Exhibit 38.

[10] Plaintiff's Consolidated Deposition Exhibit 37.

[11] Declaration of Dr. Terrance Scanlon at ¶11.

[12] Plaintiff's Consolidated Deposition Exhibit 9 at 2; Deposition of Allison Chance at 33.

[13] Plaintiff's Consolidated Deposition Exhibits 16-17; Deposition of Ruth Gray at 57-58; Deposition of Michelle Popik at 57.

[14] *Id.*; Deposition of Fletcher Berger at 209.

[15] Plaintiff's Consolidated Deposition Exhibit 12.

[16] Plaintiff's Consolidated Deposition Exhibits 12 and 37.

[17] Plaintiff's Consolidated Deposition Exhibit 9 at 2; Deposition of Allison Chance at 33; and Plaintiff's Consolidated Deposition Exhibits 4-6.

[18] Plaintiff's Consolidated Deposition Exhibits 16-17; Deposition of Ruth Gray at 57-58; Deposition of Michelle Popik at 57.

reasons for terminating her employment, Mrs. Thirion can also show that Mayor Berger had a racially preferential goal for the City's workforce.[19]

As for Mrs. Thirion's claims of FMLA interference and failure to accommodate her disability, the record indeed warrants summary judgment – but *against* Defendants, not for them.[20] It is undisputed that Defendants approved Mrs. Thirion to take FMLA leave through October 21, 2008, and that her doctor reasonably relied on that approval in treating Mrs. Thirion.[21] With regard to Mrs. Thirion's disability discrimination claim, there is no dispute that she was disabled.[22] Although Defendants *could* have accommodated Mrs. Thirion's request for unpaid medical leave through October with no undue hardship,[23] they fired her instead.[24] In fact, in terminating Mrs. Thirion, Defendants specifically referred to her illness, indicating that the City no longer believed she could be a "productive" employee.[25]

### B. CONTROLLING LAW

#### 1. Disability Discrimination

##### a. Failure to Accommodate

##### b. Disparate Treatment

- To establish a claim of disability discrimination, a plaintiff must establish that: (1) she is disabled; (2) an adverse action was taken by her employer at least in part because she was disabled; and (3) even though she was disabled, she could have performed the essential functions of her job with a reasonable accommodation.[26]

- The proper inquiry is whether the Plaintiff was qualified to perform the essential functions of her job **with an accommodation**.[27]

#### 2. Race Discrimination

- R.C. § 4112.02(A) prohibits race discrimination in employment. To establish a *prima facie* case, a plaintiff must prove: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subject to an adverse job

---

[19] Deposition of Fletcher Berger at 239.
[20] *See* Doc. 20, Plaintiff's Motion for Partial Summary Judgment. To avoid duplication of arguments Mrs. Thirion has already comprehensively briefed on the issues raised in that motion, she incorporates such by reference for the purposes of opposing Defendants' motion.
[21] Declaration of Dr. Terrance Scanlon at ¶¶ 16-17.
[22] *Id.* at ¶¶ 11, 20; Deposition of Fletcher Berger at 169.
[23] Deposition of Ruth Gray at 86; *see also* Plaintiff's Exhibit 10 at 2; Deposition of Allison Chance at 34.
[24] Plaintiff's Exhibit 12.
[25] Plaintiff's Exhibit 12.
[26] *Hood v. Diamond Prod., Inc.*, 74 Ohio St.3d 298, 302, 658 N.E.2d 738, 739 (Ohio 1996).
[27] *Hood,* 74 Ohio St.3d at 302.

action; and (4) she was replaced by a member of the non-protected class.[28] This burden "is not onerous, but one easily met."[29]

- The Sixth Circuit defines "reverse discrimination" as a claim by a member of the *majority* that he is being discriminated against "despite his majority status."[30] As the Sixth Circuit has noted, "we have serious misgivings about the soundness of a test which imposes a more onerous standard for plaintiffs who are white or male than for their non-white or female counterparts."[31]

- The Sixth Circuit has held that an employee established "background circumstances" of reverse discrimination where the decision-makers are of a different race than the plaintiff: "The mere fact that an adverse employment decision was made by a member of a racial minority is sufficient to establish the first prong of the *prima facie* case [of reverse race discrimination]."[32]

- The promotion and reassignment of a part-time employee "is analogous to hiring a new employee to cover the terminated employee's duties."[33] A plaintiff is not required to prove that the individual who replaced her undertook *every* single duty she had previously been assigned.[34]

- A plaintiff meets her burden of establishing that a defendant's stated reason for an adverse action is pretext for retaliation either by direct evidence showing that retaliation more likely motivated the employer or, indirectly, with evidence showing that the employer's explanation is not credible because: (1) it has no basis in fact; (2) it did not actually motivate defendant's challenged conduct; or (3) it was insufficient to warrant the challenged conduct.[35] Where a plaintiff establishes pretext, a jury may infer the ultimate fact of retaliation from the falsity of an employer's stated explanation.[36]

- An employer's changing rationale for making an adverse employment decision is, in and of itself, evidence of pretext.[37] An employer's reasons are pretext where

---

[28] *Barker v. Scovill, Inc.*, 6 Ohio St.3d 146, 147, 451 N.E.2d 807 (1983); *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).
[29] *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.2000).
[30] *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir.2008); *citing Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir.1985).
[31] *Id.* (declining to resolve this issue because plaintiff failed to satisfy a different prong of his *prima facie* case).
[32] *Id.*; *citing Zambetti v. Cuyahoga Community College*, 314 F.3d 249, 257 (6th Cir.2002)(holding that a white plaintiff satisfied the "background circumstances" requirement by showing that the decision-maker was African American).
[33] *Tinker v. Sears Roebuck*, 127 F.3d 519, 522 (6th Cir.1997).
[34] *McCrory v. Kraft Food Ingredients*, 98 F.3d 1342 (6th Cir.1996).
[35] *Peters v. Lincoln Electric*, 285 F.3d 456, 470 (6th Cir.2002); *citing Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1081 (6th Cir.1994); *see also Seay v. Tenn. Valley Auth.*, 338 F.3d 454, 463 (6th Cir.2003).
[36] *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147-148 (2000).
[37] *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir.2002); *Simple v. Walgreen Co.*, 511 F.3d 668, 671 (7th Cir.2007)(an inconsistency is "suggestive of pretext"); *Dominguez-Cruz v. Suttle Caribe,*

they "are inconsistent at best, if not outright contradictory" and become "'so intertwined' that the credibility of **any** of them is in doubt."[38]

- "[M]anagement's consideration of an impermissible factor in one context may support the inference that the impermissible factor entered into the decision-making process in another context."[39] This is "especially true when the discriminatory statement is 'not an off-hand comment by a low-level supervisor' but a remark by a senior official evidencing managerial policy."[40]

### 3. Retaliation (R.C. Chapter 4112)

#### a. Direct Evidence of Retaliation

- "Direct evidence is evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."[41] It permits a fact finder to conclude the action was motivated at least in part by retaliation without requiring him to draw any inferences.[42] Direct evidence shows both that employer was predisposed to retaliation and that it acted on that predisposition.[43]

- An employee who presents direct evidence of retaliation "does not bear the burden of disproving other possible non-retaliatory reasons for the adverse action. Rather, the burden is then placed on the employer to *prove* by a preponderance of the evidence that it would have made the same decision absent its retaliatory motive.[44]

#### b. Circumstantial Evidence of Retaliation

- A plaintiff may use circumstantial evidence to establish an inference of retaliation by proving that: (1) she engaged in protected activity; (2) the defendant knew of the protected activity; (3) she was subject to a material adverse action; and (4) there was a causal connection between her protected activity and the adverse action.[45] "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met."[46]

---

Inc., 202 F.3d 424, 432 (1st Cir.2002)(where an employer "at different times, gives different explanations, a jury may infer that the articulated reasons are pretextual").
[38] *Peck v. Elyria Foundry Co.*, No.08-3331, unreported, 2009 U.S.App.Lexis 20127 at * (6th Cir.2009)(emphasis added).
[39] *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 356-357 (6th Cir.1998); *citing Conway v. Electro Switch Corp.*, 825 F.2d 593, 597-598 (6th Cir.1987).
[40] *Ercegovich*, 154 F.3d at 356-357; *citing Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir.1995).
[41] *Id.; citing Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999).
[42] *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir.2003).
[43] *Hein v. All America Plywood Co.*, 232 F.3d 482, 488 (6th Cir.2000).
[44] *Weigel v. Baptist Hospital of East Tenn.*, 302 F.3d 367, 382 (6th Cir.2002).
[45] *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir.1997); *see also Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)(in the context of retaliation, a material adverse action is

5

- Once this *prima facie* case is established, the burden of producing some non-discriminatory reason for the adverse action shifts to the defendant.[47]

- To satisfy the causal connection element of a *prima facie* case of retaliation, a plaintiff is required to "proffer evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'"[48] This burden is "minimal" and requires "merely that the plaintiff establish that the protected activity and the adverse action were not wholly unrelated."[49]

- "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."[50] The Sixth Circuit has held that adverse actions that fall within a three-month period of time between the protected activity and the adverse action is sufficient to create a causal connection for the purposes of establishing a *prima facie* case.[51]

- A plaintiff meets her burden of establishing that a defendant's stated reason for an adverse action is pretext for retaliation either by direct evidence showing that retaliation more likely motivated the employer or, indirectly, with evidence showing that the employer's explanation is not credible because: (1) it has no basis in fact; (2) it did not actually motivate defendant's challenged conduct; or (3) it was insufficient to warrant the challenged conduct.[52] Where a plaintiff establishes pretext, a jury may infer the ultimate fact of retaliation from the falsity of an employer's stated explanation.[53]

- An employer's changing rationale for making an adverse employment decision is, in and of itself, evidence of pretext.[54] An employer's reasons are pretext where

---

that which "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'")(internal citations omitted).
[46] *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.2000).
[47] *DiCarlo*, 358 F.3d at 420; *Williams v. Nashville Network*, 132 F.3d 1123, 1131 (6th Cir.1997).
[48] *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir.1997); *citing Zanders v. National RR Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir.1990).
[49] *Avery Dennison* at 862; *citing Simmons v. Camden Cty. Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir.1985).
[50] *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir.2007); *citing Clark Cty. School Dist. v. Bredeen*, 532 U.S. 268, 273 (2001).
[51] *Goeller v. Ohio Dept. of Rehab. and Corrections*, 285 Fed.Appx. 250, 257 (two months); *Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 563 (6th Cir.2004)(three months).
[52] *Peters v. Lincoln Electric*, 285 F.3d 456, 470 (6th Cir.2002); *citing Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1081 (6th Cir.1994); *see also Seay v. Tenn. Valley Auth.*, 338 F.3d 454, 463 (6th Cir.2003).
[53] *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147-148 (2000).
[54] *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir.2002); *Simple v. Walgreen Co.*, 511 F.3d 668, 671 (7th Cir.2007)(an inconsistency is "suggestive of pretext"); *Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 432 (1st Cir.2002)(where an employer "at different times, gives different explanations, a jury may infer that the articulated reasons are pretextual").

they "are inconsistent at best, if not outright contradictory" and become "'so intertwined' that the credibility of **any** of them is in doubt."[55]

### C. PLAINTIFF'S PROPOSED WITNESS LIST

Please see Exhibit A, attached.

### D. PLAINTIFF'S EXHIBIT LIST INDEX

Please see Exhibit B, attached.

### E. EVIDENTIARY ISSUES LIKELY TO ARISE AT TRIAL

These evidentiary issues include:

1. Waived defenses (mitigation, advice of counsel, undue burden, impossibility);

2. Rule 68 offer of judgment/conditional offers of reinstatement;

3. Improper lay opinions regarding issues of medicine and/or law;

4. Improper character and irrelevant testimony regarding non-similarly situated employees of the City; and

5. Defense counsel's on-record stipulation agreeing not to assert advice of counsel as a defense and not to call City attorneys Ken Schuman and Ross Circincione as witnesses.

### F. PROPOSED SUBJECTS FOR *VOIR DIRE* EXAMINATION

Please see Exhibit C, attached.

### G. PROPOSED JURY INSTRUCTIONS

Pursuant to the Court's modified trial order, to be submitted on March 8, 2010.

### H. PRELIMINARY STATEMENTS AND STIPULATIONS

Stipulations of the Parties:

1. August 25, 2008, is 12 weeks (or 84 days) after June 2, 2008.

---

[55] *Peck v. Elyria Foundry Co.*, No.08-3331, unreported, 2009 U.S.App.Lexis 20127 at * (6th Cir.2009)(emphasis added).

2. Defendants will not call either Ken Schuman or Ross Cirincione as witnesses.

3. Defendants will not assert advice of counsel as a defense.

Plaintiff respectfully requests the opportunity to supplement this trial brief in the event it is warranted.

Respectfully submitted,

THORMAN & HARDIN-LEVINE CO., LPA

*/s/ Christopher P. Thorman*
CHRISTOPHER P. THORMAN (0056013)
STACY A. HINNERS (0076458)
1220 W. 6th Street, Suite 207
Cleveland, OH 44113
Telephone: (216)621-9767
cthorman@thllaw.com
shinners@thllaw.com

*Attorneys for Plaintiff Charlene Thirion*

## CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing was filed electronically with the Clerk via CM/ECF on March 5, 2010, with copies electronically served to: Ross Cirincione, Ken Schuman, Hilary Taylor and Timothy Obringer.

*/s/ Christopher P. Thorman*
CHRISTOPHER P. THORMAN (0056013)